1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5255
    Fax:  (415) 703-5843
8   Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **SIMEON LUJAO,**<br><br>                                 Petitioner,<br><br>          v.<br><br>**BEN CURRY,  Warden,**<br><br>                  Respondent-Appellee. | C07-4900 VRW<br><br>**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    The Honorable Vaughn R. Walker |

In this habeas corpus action, state inmate Simeon Lujao contends that the Board of Parole Hearings unconstitutionally denied him parole at his 2006 subsequent parole consideration hearing.

This Court issued an order to show cause on January 17, 2008.  Respondent Ben Curry, the current Acting Warden of the Correctional Training Facility, answers as follows:

**ANSWER**

In response to the petition for writ of habeas corpus filed on September 21, 2007, Respondent hereby admits, denies, and alleges:

/ / /

1. Lujao is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his August 30, 1988 conviction for second-degree murder. (Ex. A, Abstract of Judgment.) Lujao pleaded guilty to this charge. He is currently serving an indeterminate sentence of fifteen years to life. Lujao does not contest this conviction in the instant action.

2. Respondent affirmatively alleges that Lujao killed his cousin, Arturo Vasaya, by stabbing him eleven times while the two rode as passengers in a car. (Ex. B, Probation Officers Report, at p. 1-2; Ex. C, 2004 Life Prisoner Evaluation Report, at p. 1.) The driver, concerned for his own safety, pulled the car over and exited the vehicle. (*Id.*) The driver then went for help. (*Id.*) Lujao attempted to flee the area by hitchhiking. (*Id.*) Soon thereafter, sheriff deputies apprehended Lujao. (*Id.*) Lujao had blood on his hands, face, and clothes. (*Id.*) The deputies also discovered that Lujao had a large blood-covered knife with him. (*Id.*)

3. Respondent admits that the Board of Parole Hearings found Lujao unsuitable for parole on September 5, 2006. (Ex. D, Subsequent Parole Consideration Hearing Transcript, at pp. 29-43.) The Board based its denial on the commitment offense, Lujao's failure to develop a marketable skill, his lack of realistic parole plans, and his failure to participate in self-help programs, such as those dealing with anger management issues. (*Id.*)

The Board noted that at Lujao's last parole hearing, it recommended that he attend self-help classes, and learn a trade. (Ex. D, at p. 10; see also Ex. E, 2006 Life Prisoner Evaluation, at p. 4.) The Board asked Lujao why he had failed to perform either recommendation since his last hearing. (Ex. D, at p. 11; Ex. E, at p. 3-4.) In regards to the self-help therapy, Lujao remarked, "I am in control of myself, and I know what I am doing so, I don't really need it for myself." (Ex. D, at p. 13, see also Ex. D, at p. 15-16 [Lujao commenting, "I already control my anger"].) Lujao also admitted that he committed the murder because he lost control of his emotions. (*Id.* at p. 17.) In addressing why he had not learned a trade, Lujao answered that he did not need a trade because he was going back to the Phillippines. (*Id.* at pp. 10-11, 13.)

4. Respondent affirmatively alleges that Lujao is not a U.S. citizen and is subject to deportation to the Philippines if released. (Ex. B, at pp. 3, 5; Ex. E, at p. 4.) Furthermore, the

probation officer's report indicates that Lujao has an outstanding warrant from the Phillipines for the December 7, 1983 murder of Uldarcio Benitez. (*Id.*) Lujao told the Board at his 2006 parole consideration hearing that he would not discuss this issue because he already discussed it at his previous parole hearing. (Ex. D, at p. 8.)

5. Respondent admits that Lujao filed a habeas petition in San Benito Superior Court generally alleging the same claims that he alleges here. The San Benito Superior Court denied this petition on March 22, 2006. (Ex. F, Superior Court Denial.) Respondent further admits that the California Court of Appeal issued a May 21, 2007 denial of Lujao's habeas petition, which generally alleged the same claims that he alleges here. (Ex. G, Appellate Court Denial.) Respondent further admits that the California Supreme Court issued an August 8, 2007 denial of Lujao's habeas petition, which generally alleged the same claims that he alleges here.

Thus, Respondent admits that Lujao exhausted his state court remedies in regard to the claims concerning the Board's 2006 decision to deny him parole. However, Respondent denies that Lujao exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond the 2006 denial.

6. Respondent denies that the state court's adjudication of Lujao's claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

7. Respondent preserves the argument that Lujao does not have a federally protected liberty interest in parole. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest is created unless an action imposes an atypical or significant hardship compared with ordinary prison life); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole-release date created by unique structure and language of state parole statute); and *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected liberty interest in parole date).

Answer to Order to Show Cause; Mem. of P. & A.                                    *Lujao v. Curry*
                                                                                   C07-4900 VRW

3

1    8.   Respondent affirmatively alleges that Lujao had an opportunity to present his case to the Board, and the Board provided him with a detailed explanation for its parole denial.  Thus, Lujao received all process due under *Greenholtz*, the only clearly established federal law regarding due process rights of inmates at parole hearings.

9.   Respondent affirmatively alleges that the Board's decision is supported by some evidence.  However, notwithstanding the Ninth Circuit's contrary decision in *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever clearly established that a state parole board's decision must be supported by some evidence.

10.  Respondent denies that the Board's decision to deny Lujao parole violated the terms of his plea agreement.  Lujao was originally charged with first-degree murder.  (Ex. B, at p. 1.)  He pleaded guilty to fifteen years to life for second-degree murder.  (Ex. A.)  Lujao did not accept or receive a plea agreement that he would only serve twenty-one years in prison.  Rather, when he pleaded guilty he accepted the possibility that he could serve his entire life in prison if he was never deemed suitable for parole.

11.  Respondent affirmatively alleges that federal due process does not preclude the Board from relying on immutable factors to deny parole.  *Sass*, 461 F.3d at 1129.  The Board properly considered the gravity of Lujao's commitment offense as required under California law.  *See* Cal. Penal Code § 3041(b).  Respondent denies that the commitment offense has lost its predictive value and is no longer evidence of Lujao's current risk of dangerousness to society.  Respondent further denies that the Board failed to consider the circumstances of the murder, such as the stress Lujao was under at the time he stabbed his cousin eleven times.

12.  Respondent denies Lujao's claim that there is no evidence supporting the finding that he lacks a marketable trade.  Respondent further denies Lujao's claim that there is no evidence supporting the Board's finding that he failed to adequately participate in self-help programs, such as those specific to anger management issues.  Respondent affirmatively alleges that clearly established federal law does not require some evidence to support either finding.  Nonetheless, some evidence supports both findings by the Board.

13.  Respondent admits Lujao's claims are timely under 28 U.S.C. § 2244(d)(1), and are

not barred by any other procedural defenses.

14. Respondent denies that an evidentiary hearing is necessary in this matter.

15. Respondent affirmatively alleges that Lujao fails to establish any grounds for federal habeas relief.

16. Except as expressly admitted above, Respondent denies, generally and specifically, each allegation of the petition, and specifically denies that Lujao's administrative, statutory, or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the Court deny the petition and dismiss these proceedings.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ARGUMENT**

**THE STATE COURT DENIAL OF LUJAO'S HABEAS CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS**.

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role of federal habeas courts in reviewing petitions filed by state prisoners by placing a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits *only if* the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

    **A. The State Court Decisions Were Not Contrary to Clearly Established Federal Law.**

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole proceeding. The Court held that the only process due at a parole

consideration hearing is an opportunity for the inmate to present his case, and an explanation for a parole denial. *Greenholtz*, 442 U.S. at 16.

Lujao received both of these protections at his 2006 parole consideration hearing. (See generally Ex. D.) Furthermore, Lujao does not contend otherwise in his petition. Accordingly, Lujao's petition fails under AEDPA because he received all procedural protections due under clearly established federal law.

### 1. The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.

The some-evidence standard of review should not apply to a federal habeas proceeding challenging a parole denial, because the Supreme Court has never found that due process requires this level of judicial review.

The United States Supreme Court has reiterated that for AEDPA purposes, "clearly established federal law" refers only to the holdings of the nation's highest court on the specific issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). In *Musladin*, the Ninth Circuit held that under clearly established federal law courtroom spectators who wore buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him a fair trial. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court explained that the two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant who was required to wear prison clothing during trial and the other concerning a defendant who had four uniformed troopers placed behind him at trial — involved state-sponsored courtroom practices that were unlike the private conduct of the victim's family. *Id.* at 653-54. As a result, the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'" *Id.* at 653-54.

Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), that a federal habeas petitioner maintained no claim under AEDPA because Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to adequately investigate mitigating evidence is factually distinct from a defense attorney failing to

investigate mitigating evidence after the client demonstrates a reluctance to assist the investigation. Consequently, the Supreme Court indicated that circuit courts may not import — under the guise of "clearly established federal law" — a federal standard used in one context to a different factual circumstance. *Id.*; *see also Musladin,* 127 S. Ct. at 653-54.[1/]

Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the *Hill* some-evidence standard of review — a Supreme Court holding applicable to prison disciplinary hearings — to habeas petitions challenging denials of parole. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445 (1985) — a prison disciplinary case — for proposition that Board's denial of parole requires some evidence); *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) (pet. for reh'g en banc denied).

Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process rights of an inmate in the parole context, specifically recognized the procedural distinction between the government denying an inmate parole and the government determining guilt by way of an adversarial proceeding. *Greenholtz*, 442 U.S. at 15-16. Based on this distinction, the Supreme Court determined that a denial of parole only requires the state to provide an opportunity for the inmate to present his case and an explanation for the parole denial — not additional protections, such as those in an adversarial proceeding. *Id.* (reasoning that "to require the parole authority to provide a summary of the evidence would convert the [parole-consideration] process into an adversary proceeding and to equate the Board's parole release determination with a guilt determination").

As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for prison *disciplinary* hearings should not apply to a federal habeas proceeding challenging a parole

---

1. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. *See e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because the Supreme Court has never held — even though the Ninth Circuit has — that such an irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel — established in *Wainwright v. Greenfield*, 474 U.S. 284 (1986) — to a competency hearing, federal law was not clearly established for AEDPA purposes).

Answer to Order to Show Cause; Mem. of P. & A.                                              *Lujao v. Curry*
                                                                                              C07-4900 VRW

1 denial. However, Respondent recognizes that the Ninth Circuit has held otherwise and will
2 argue this case accordingly.

### 2. Even if the some-evidence standard were clearly established federal law, the state court decisions correctly applied this standard.

Assuming the some-evidence standard applies, Lujao's claim fails under AEDPA because the state court decisions were not contrary to, and did not involve an unreasonable application of, this "minimally stringent" standard. The some-evidence standard of review "does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the record that could support the conclusion reached by the [Board]." *Hill*, 472 U.S. at 455-57; *see also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal").

California law requires that some evidence support the Board's decision to deny parole. *In re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002). Therefore, the state court decisions at issue here applied the correct federal standard. Even so, when the state court holdings fail to provide a reasoned explanation, as they do here, the reviewing court must independently review the record to determine whether the state court decisions were a reasonable application of federal law. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

Here, the state court denials were a reasonable application of the some-evidence standard of review, because the Board's decision contains evidentiary support.

First, the Board relied on the gravity of the commitment offense as dictated by California Penal Code 3041(b). (Ex. D, at pp. 29-30; see also Ex. B [describing severity of the murder].)

Second, the Board relied on Lujao's failure to participate in self-help programs, specifically those addressing his anger issues. (Ex. D, at pp. 30-33.) Lujao acknowledged that in the four years leading up to his 2006 parole hearing, he had not participated in any anger management or self-help programs. (*Id.* at p. 14.) He also acknowledged that he committed the murder because he lost control of his emotions. (*Id.* at p. 17.) Yet, Lujao squabbled with the Board concerning his need for anger therapy, and remarked, "I am in control of myself, and I know what I am doing so, I don't really need it for myself." (Ex. D, at p. 13.)

1  Lastly, the Board relied on Lujao's lack of realistic parole plans and his failure to develop a
2  marketable skill. (*Id.* at p. 33.) Again, the Board's finding contains evidentiary support. Lujao
3  even acknowledged that he had not learned a marketable skill or trade since his last parole
4  hearing, when the Board had recommended that he learn one. (*Id.* at pp. 10-11, 13.)
5  Furthermore, Lujao rationalized his failure to learn a skill by telling the Board that all the trades
6  he could learn would not be beneficial in the Philippines. (*Id.* at p. 13.)

7  Accordingly, the Board's denial is supported by some evidence. Therefore, the state court
8  denials of Lujao's habeas petitions were not an unreasonable application of the some-evidence
9  standard of review.

**B.   The State Court Decisions Upholding the Board's Parole Denial Reasonably Determined the Facts.**

12  Under the second AEDPA standard, a federal court may grant habeas relief if the state court
13  decisions were based on an unreasonable determination of the facts in light of the evidence
14  presented at the state court proceedings. 28 U.S.C. § 2254(d)(2).

15  Here, the exhibits Lujao presented at the state court proceedings, such as the probation
16  officer's report, and the 2006 parole consideration hearing transcript, are identical to the exhibits
17  he presents in his current petition. These exhibits all support the Board's findings, and,
18  therefore, Lujao has not demonstrated that the state court decisions were based on an
19  unreasonable determination of the facts.

20  Indeed, the Board relied on accurate information with regard to determining Lujao's parole
21  suitability. In addressing the commitment offense, the Board relied on Lujao's 2004 Life
22  Prisoner Evaluation Report, which was based on the facts presented in the Probation Officer's
23  Report. (Ex. D, at p. 7; Ex. C, at p. 1.) In addressing Lujao's failure to participate in self-help
24  programs and his failure to learn a marketable skill, the Board relied on Lujao's testimony and
25  his 2006 Life Prisoner Evaluation Report. (Ex. D, at p. 10; Ex. E, at pp. 3-5.)

26  Lujao does not allege nor provide any evidence to suggest that these documents contained
27  inaccurate information. As a result, the record indicates that the Board relied on accurate
28  information, and it did not base its decision on an unreasonable determination of the facts.

# **CONCLUSION**

Lujao fails to demonstrate a basis for relief under AEDPA's two standards permitting a habeas remedy after a state court has already adjudicated the same issue. Under the first standard, the state court's adjudication of Lujao's claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Lujao received all process entitled under *Greenholtz*, and — although not required by clearly established federal law — some evidence supports the Board's decision. Under the second AEDPA standard, the record reflects that the evidence presented at the parole hearing, such as Lujao's testimony, and his 2004 and 2006 Life Prisoner Evaluation reports, accurately reflected the facts. Thus, Respondent respectfully requests that the petition be denied.

Dated: March 17, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General


/S/ BRIAN C. KINNEY
BRIAN C. KINNEY
Deputy Attorney General
Attorneys for Respondent

40229733.wpd
SF2008400425

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Simeon Lujao v. Ben Curry, Warden**

Case No.:    **C 07-4900 VRW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **March 17, 2008**, I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Simeon Lujao  (D-94153)
Correctional Training Facility
P.O. Box 689
Soledad, CA  93960-0689
In pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **March 17, 2008**, at San Francisco, California.

|  |  |
|---|---|
| R. Panganiban | /S/ R. Panganiban |
| Declarant | Signature |

40230041.wpd