Case 3:07-cv-04900-VRW   Document 4-3   Filed 03/17/2008   Page 1 of 11

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF SAN BENITO

The People of the State of California,
        Plaintiff,

vs.

SIMEON LUYAO

        Defendant.

**Report of the Probation Officer**

FILED IN SAN BENITO COUNTY
AUG 29 1988
JOHN C. HODGES, CLERK
BY Debbie M Tomlinson
DEPUTY CLERK

No. 3049

TO THE HONORABLE THOMAS P. BREEN, JUDGE OF THE ABOVE ENTITLED COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF SAN BENITO

*Pursuant to the statute and the direction of this Court, the Probation Officer hereby respectfully submits the following report regarding the above named defendant after her having Pled guilty to the charge of Violation of Sections 187 P.C., 2nd degree of the State of California Penal Codes.

### DATES IN CASE

| | |
|---|---|
| DATE OFFENSE COMMITTED | February 6, 1988 |
| DATE OF ARREST | February 6, 1988 |
| INFORMATION FILED | May 27, 1988 |
| REFERRED TO PROBATION OFFICER | July 17, 1988 |
| REPORT COMPLETED | August 26, 1988 |
| COURT DATE | August 30, 1988 |
| DAYS IN JAIL | 238 days (actual) |
| ATTORNEY | Robert H. Pinto, Public Defender |

### HISTORY

| | |
|---|---|
| DATE OF BIRTH | November 27, 1947 |
| BIRTHPLACE | Philippines |
| EDUCATION | College Graduate |
| OCCUPATION | Civil Servant |
| RESIDED IN CALIFORNIA | 2 years |
| RESIDED IN COUNTY | Non-resident |
| LATEST ADDRESS | 1100 Howe Avenue, Sacramento, CA |

PRESENT VIOLATION:

This matter originated in San Benito County Justice Court where complaint #88-93-15161 was filed on February 9, 1988 charging the defendant with a violation of section 187 P.C., murder in the first degree, a felony. Thereafter, a preliminary hearing was held on May 25, 1988 after which the defendant was bound over to Superior Court as charged. The defendant was arraigned in Superior Court on May 31, 1988 pursuant to Information #3049 charging him with the same offense. Subsequently, a jury trial was scheduled for July 13, 1988. However, prior to the jury trial, the defendant entered a plea of guilty to violating section 187 P.C., murder in the second degree, a felony. August 30, 1988 was then set as the date for receipt of the Probation Report and Sentencing.

CIRCUMSTANCES OF OFFENSE:

The following information was taken from San Benito County Sheriff's Dept. Records Case #88-0220:

On February 6, 1988 at approximately 9:00 p.m., deputies responded to a reported attempted murder which had occurred on Hwy. 101 within the County boundaries.

After arriving at the scene, deputies contacted witness Lowell Ronolo who told deputies that while he was driving towards San Jose, the suspect, Simeon Luyao, attacked a passenger in the vehicle, Arturo Vasaya, with a knife. The witness stated that he stopped the vehicle and fled the area as he was concerned for his own safety. However, before abandoning the vehicle he observed that the victim was in serious condition and there was a large amount of blood on both the victim and the suspect at that time.

Within a short period of time, the suspect, Simeon Luyao was apprehended while standing in a culvert just north of the stopped vehicle. He was then taken into custody and placed under arrest for murder, as the victim had succumbed as a result of his injuries. Deputies noticed that Mr. Luyao had blood on his hands, face and clothes. A pat down search revealed a large blood-covered knife on the person of Mr. Luyao. He was then transported to County Jail and booked for murder.

Subsequently, investigators advised Mr. Luyao of his rights, which he waived, and asked him if he wanted to make a statement. Mr. Luyao agreed

1

to talk with investigators and stated that he did not know why he stabbed "Arturo." He said he had originally planned to kill himself but instead killed Mr. Vasaya.

As a result of this offense, the defendant has been in continuous custody since February 6, 1988. Therefore, he is entitled to credit for having served 238 days in custody.

DEFENDANT'S STATEMENT:

At the personal interview held at the San Benito County Jail on August 26, 1988, the defendant stated that he is very sorry that his cousin and very good friend, Arturo Vasaya, is dead. The defendant stated that the whole thing was "an accident" and that he was acting "crazy" when this incident occurred. He went on to say that he does not know why he stabbed his cousin and that he has asked his family for forgiveness.

Mr. Luyao said that he is not a criminal, has never been convicted of any crimes either in the United States or the Philippines, and tries to obey all the rules and regulations in the jail. For these reasons, he said, he feels that the court should sentence him to the lower term of fifteen years as penalty for his crime.

INTERESTED PARTIES:

I am in receipt of an eleven page psychological report which was completed by Dr. Walter J. Wilcox, M.D. on April 1, 1988. This report is the result of approximately two hours of interviews by Dr. Wilcox with the defendant. It is quite complete in regards to his family, educational and work background in the Philippines. In addition, there is a long discussion about Mr. Luyao's political involvements and the possibility that he had fallen out of favor with his mentor and would be harmed if he returned to the Philippines.

Dr. Wilcox concluded that there is at least a possibility that Mr. Luyao was suffering from a "dissociative disorder" in which his thinking was so deranged and disorganized that it affected his ability to carry out any planned or rational activities at the time he killed Mr. Vasaya. On the basis of this conclusion, Dr. Wilcox stated that it is possible Mr. Luyao could not appreciate the nature and consequences of his acts towards Arturo Vasaya, nor could he could control them at the time when he stabbed his friend to death. In addition, Dr. Wilcox stated that he sees the situation as a desperate and disorganized, as well as purposeless act, by an individual who was in fear of being returned to his homeland where he might face assasination,

prosecution for a murder which he claims he did not commit, or constant harassment by his political enemies.

VICTIM'S STATEMENT:

The victim, Arturo Buscato Vasaya, was living at 91 Corey Road, Salinas prior to his death. The next of kin is a sister, Felina Pimentel who resides in Chualar, CA. She made final arrangements for Mr. Vasaya.

ACCOMPLICES/CO-DEFENDANTS:

None.

PRIOR RECORD:

None.

Documents presented to me by Mr. Luyao show that he had been a civil servant from around 1972 until 1986 in his home town of Cebu, the Philippines and was apparently held in high esteem. Therefore, it is remote that he would have any kind of a criminal record. However, at the present time there is an outstanding warrant from the Philippines charging him with the killing of one Uldaricio Benitez who was murdered on December 7, 1983 in Cebu.

Mr. Luayo explained that his political enemies are attempting to have him convicted of the murder as a means of getting him out of the way. He stated that he has been told by his brother, who is an attorney in the Philippines, that if he went back to the Philippines and stood trial there is a "99% chance that he would be acquitted."

CONDUCT WHILE IN CUSTODY:

No adverse reports received.

SOCIAL HISTORY:

a. Family History

Mr. Luyao is a 40 year old, married, Philippino male with six children ranging in age from 8 to 17 years. The family consists of four daughters, two sons and a step-grand son, all of whom live with his wife in the Philippines. Mr. Luyao stated that the family originally lived in Cebu, the Philippines but

has since moved to the other end of the country to get away from enemies who are threatening the family. He said that his wife is building a new home and attempting to buy a business from which she hopes to support the family.

c. Education

The defendant stated that he attended local schools in Cebu, the Philippines and eventually was graduated from college with a teaching credential. He stated that he was unable to obtain a teaching position after graduation from college and was forced to hold a series of blue collar-type positions before entering Civil Service.

d. Employment

The defendant stated that around 1972 he became involved with a Congressman Abines who was a apparently a powerful political figure around the Cebu area. The Congressman apparently befriended him and the defendant became a barrio captain and later moved into higher and higher civil service positions. Evidently, when President Marcos was eventually forced to leave the Philippines, Congressman Abines lost some of his power and at some point decided to send his son to Sacramento, CA to attend college. He asked Mr. Luyao to accompany his son as a kind of body guard. Mr. Luyao apparently resented this situation as he was separated from his family and felt that the Abines family was attempting to remove him from the political scene in the Philippines. At any rate, Mr. Luyao came to this country in 1986 and obtained employment as a cook in a small restaurant. At the time of his arrest, he listed his employment as cook for Gary's Bar and Grill in Sacramento, CA.

e. Physical Health

The defendant appears to be in good health and reported no medical problems at this time.

f. Mental Health

Originally, it was thought that the defendant may have psychological problems. Therefore, Dr. Wilcox completed an extensive psychiatric evaluation and found that any problems Mr. Luyao may have had were situational and, aside from remorse for his crime and possible depression due to homesickness, the defendant is probably not suffering any psychological problems at this time.

4

g. Drugs/Alcohol

The defendant denied any use of experimentation with drugs and stated he is only a social drinker.

h. Military Service

None.

i. Financial Condition

The defendant has no assets or liabilities at the present time. He was basically living a subsistance life-style while in the United States although he did own a business in the Philippines which has since been sold.

j. Holds/Pending Charges

The County Sheriff's Department is in receipt of a detainer from the Republic of the Philippines which charges the defendant with murder. As a result, American authorities are under notice that the Phillipine Government wishes to extradite Mr. Luyao to resolve those charges. In addition, a United States Border Patrol Hold has been placed on Mr. Luyao as his visitor visa has expired and he is, therefore, an illegal alien at this time.

CIRCUMSTANCES IN AGGRAVATION - RULE 421:

(A) FACTS RELATING TO THE CRIME, INCLUDING THE FACT THAT:

(a) (1) The crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness or callousness whether or not charge or chargeable as an enhancement under Section 12022.7.

(a) (2) The defendant was armed with and used a weapon at the time of the commission of the crime, whether or not charged or chargeable as an enhancement under Section 12022 or 12022.5.

(a) (3) The victim was particularly vulnerable.

(a) (12) The defendant took advantage of a position of trust or confidence to commit the offense.

5

(B) FACTS RELATING TO THE DEFENDANT, INCLUDING THE FACT THAT:

None.

CIRCUMSTANCES IN MITIGATION - RULE 423:

(A) FACTS RELATING TO THE CRIME, INCLUDING THE FACT THAT:

(a) (3) The crime was committed because of an unusual circumstance, such as possible mental disorder, which is unlikely to recur.

(B) FACTS RELATING TO THE DEFENDANT, INCLUDING THE FACT THAT:

(b) (1) The defendant has no prior criminal record.

(b) (2) The defendant may have been suffering from a mental condition that significantly reduced his culpability for the crime.

(b) (3) The defendant voluntarily acknowledged wrongdoing prior to arrest or at an early stage of the criminal process.

CRITERIA AFFECTING PROBATION - RULE 414:

(a) There are statutory provisions limiting or prohibiting the grant of probation in this case as set forth in section 1203(e)(1); except in unusual cases where the interests of justice would best be served if the person is granted probation. Probation shall not be granted to a person who possessed a deadly weapon during commission of the crime of murder. Probation shall not be granted to a person who, at the time of perpetration of the cirme, committed a murder.

(b) There is a likelihood that if not imprisoned the defendant will be a danger to others.

(C) FACTS RELATING TO THE CRIME, INCLUDING:

(c) (1) The circumstances of the crime were such that the defendant, without provocation or notice, stabbed and unarmed and innocent victim to death.

(c) (2) The vulnerability of the victim was such that the victim was an unsuspecting relative of the defendant who was unarmed at the time of the attack.

6

(c) (3) The defendant was armed with and used a deadly weapon during the commission of the crime.

(c) (4) The defendant inflicted bodily injury resulting in the death of the victim.

(c) (5) The defendant instigated the crime. The defendant was an active participant in the crime.

(c) (6) The crime was committed because of unusual circumstances in that there was a strong possibility the defendant was suffering from a mental disorder at the time of the offense.

(c) (8) The defendant took advantage of a position of trust and confidence to commit the crime.

(D) FACTS RELATING TO THE DEFENDANT, INCLUDING:

(d) (1) The defendant has no prior criminal record.

ENHANCEMENTS:

None.

SUGGESTED COMMITMENT TERM:

| Offense | Aggravation | Mitigation |
|---|---|---|
| 187 P.C., 2nd degree, felony | yes, 4 pts. | yes, 4 pts. |
| Base Term | Enhancements | Total Term |
| SP-not less than 15 yrs., nor more than life | none | SP-21 years |

SUMMARY AND EVALUATION:

Before the court for sentencing is Simeon Luyao who is a Philippine national, is married, has a large extended family in the Philippines, and has been a successful public servant in the past. The defendant has no prior record, is now illegally in the United States and is before the Court for his first criminal conviction.

7

Available evidence seems to imply that Mr. Luyao was so distraught at the prospect of having to be returned the Philippines, he killed his cousin for no apparent reason. According to Mr. Luyao, his political enemies were attempting to frame him for a murder which occurred in Cebu, the Philippines around 1983 and were threatening his family. He stated that he was convinced that he would probably be killed if he returned to the Philippines. Thus, when his Visa expired, and the pressure mounted, he exploded on February 6, 1988 and killed his cousin.

However, it seems just as reasonable to believe that Mr. Luyao deliberately killed the victim knowing that he would have to serve a prison sentence in the United States from 5 to 7 years and would, therefore, not be returned to the Philippines. This might be in hopes that the political climate of the Philippines would change and he would no longer be threatened by his enemies. At any rate, this is a serious offense and Mr. Luyao understands that he will be required to serve a sentence in the State Prison.

It is felt that Mr. Luyao should receive a sentence of 21 years in this matter so that he will serve a minimum of approximately seven years for his second degree murder conviction. Seven years is the average time served for people who commit such a crime and the defendant's actions were neither more outrageous or more mitigated than the usual second degree murder. Therefore, it will be recommended that Mr. Luyao be sentenced to 21 years in prison.

RECOMMENDATION:

In view of the preceding facts and circumstances, it is respectfully recommended that probation be denied and that the defendant be sentenced to the California Department of Corrections for a term of twenty-one(21) years.

Dated: August 26, 1988            Respectfully submitted,

                                  DETE KRAUS
                                  CHIEF PROBATION OFFICER
                                  SAN BENITO COUNTY


                                  By _____
                                     Stan Peterlin
                                     Deputy Chief Probation Officer

8

Pursuant to Section 1203 Penal Code, of the State of California, I have read and considered the foregoing Report and Recommendation of the Probation Officer filed in this matter.

DATED: Aug 29, 88

THOMAS P. BREEN
JUDGE OF THE SUPERIOR COURT

9