Simeon Lujao, D-94153
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960

Petitioner in pro se

FILED

08 APR 15 PM 2: 05

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SIMEON LUJAO, | Case No. C07-4900 VRW |
|      Petitioner, | PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES |
|     v. | |
| BEN CURRY, Warden, | |
| | Judge: The Honorable Vaughn R. Walker |
|      Respondent. | |
| _____/ | |

I N T R O D U C T I O N

Simeon Lujao (hereafter Petitioner), a state prisoner contends in his habeas corpus petition that the Board of Parole Hearings (hereafter Board) violated his constitutional due process guarantee when the Board found him unsuitable for parole on September 5, 2006 absent "some evidence" that he is a current risk to public safety.

After this Court issued an order to show cause on January 17, 2008, Petitioner was served with the respondent's Answer on March 17, 2008.

- 1 -

TRAVERSE TO ANSWER

In response to the respondent's answer to Petitioner's writ of habeas corpus, Petitioner hereby admits, denies, and realleges as follows:

I

In response to paragraphs 2, 3, 4, 5, and 13 of respondent's Answer, Petitioner admits them to be true.

II

In response to paragraph 1 of respondent's Answer, Petitioner denies that he is lawfully in the custody of the California Department of Corrections and Rehabilitation (CDCR). Although Petitioner was rightfully convicted of second degree murder on August 30, 1988, having exceeded his minimum term of 15 years at the time of his 2006 parole hearing by 4 years; being rehabilitated and no evidence of being a current threat to the public, he is now unlawfully in the custody of the CDCR.

III

In response to paragraph 6 of respondent's Answer, Petitioner expressly denies that the state court's adjudication of his claims was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was not an unreasonable determination in light of the facts (28 U.S.C. § 2254(d)(1) and (2)).

IV

In response to paragraph 7 of respondent's Answer, Petitioner expressly denies that he does not have a liberty interest in parole.

Under California's parole statutes, Penal Code § 3041(b),[1] Petitioner has a liberty interest in parole (Greenholtz v. Inmates of Nebraska Penal and Correctional Complex (hereafter Greenholtz), 442 U.S. 1 (1979); Sass v. Board of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). Why California's Attorney General, the state's "top cop" who is sworn to uphold and carry out the law, as an officer of the court, would keep making this frivolous and meritless argument can only be described as political, demonstrating a lack of integrity and respect for the law. Petitioner will not give this meritless allegation any more time.

V

In response to paragraph 8 of respondent's Answer, Petitioner expressly denies that his due process guarantee is satisfied by merely being afforded a parole hearing and the opportunity to respond and being given a detailed explanation for his parole denial. Due process guarantees more than a mere hearing and reasons given for a parole denial.

VI

In response to paragraph 9 of respondent's Answer, in direct connection to paragraph 8, Petitioner expressly denies that the "some evidence" standard of review does not apply to case at bench. Due process also guarantees that the decision be supported by "some evidence" and that the decision not be "arbitrary or capricious" (Superintendent v. Hill, 472 U.S. 445, 457 (1985)) and that the Board make a rational connection between the decision and a prisoner's

---

3

1. All codes and regulations are California, unless otherwise noted. California Code of Regulations, Title 15, will be cited, Cal. Code Regs., tit. 15.

"current" threat to public safety (In re Roderick, 154 Cal.App.4th 242, 263 (2007) "[I]t is not enough that there is some evidence to support the factors cited for denial; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e., that a prisoner's release will unreasonably endanger public safety"]).

VII

In response to paragraph 10 of respondent's Answer, Petitioner denies that his plea agreement was not for 21 years. Regardless of what Petitioner was charged with, he entered into a contract with the state for second degree murder, and although sentenced to 15 years to life, the legal sentence for second degree murder under California law (Penal Code § 190, 1986 ed.), by all evidence Petitioner has, the "Total Term" was to be "SP-21 years" (EXHIBIT 1, p. 7).[2/] The probation officer's report (POR) reflecting the pleaagreement, that Petitioner "should receive a sentence of 21 years in this matter so that he will serve a minimum of approximately seven years for his second degree murder conviction. .... Therefore, it will be recommended that Mr. Lujao be sentenced to 21 years in prison" (EX. 1, p. 8). This was evidently made in accord with Cal. Code Regs., tit. 15, § 2403(c), the legislatively prescribed matrix of uniform terms for second degree murder.

Because Petitioner was never afforded a copy of his plea agreement, not understanding the details or fine print, it is this contention that requires an evidentiary hearing.

---

2.  Exhibits cited are to those attached to Petitioner's habeas corpus
    petition, unless otherwise noted, being preceded by "Ans."

- 4 -

VIII

In response to paragraph 11 of respondent's Answer, Petitioner
denies that the commitment offense does not lose predictive value
over time. Admittedly, while some murders, e.g., serial murders,
thrill killings, torture and cannibalism murders, may not lose
predictive value for many, many years, if ever, the state and federal
courts have, for the most part, reached a consensus that after 15
to 20 years the commitment offense loses predictive value in
determining a current risk to public safety or reoffending (see In
re Lee, 143 Cal.App.4th, at 1409, 1412 (2006); In re Elkins, 144
Cal.App.4th 475, 498 (2006); In re Scott II, 133 Cal.App.4th 573,
595 (2005); In re Roderick, 154 Cal.App.4th, at 277, supra; Hayward
v. Marshall, 512 F.3d 536, 547 (9th Cir. 2008) [offense loses
predictive value after serving minimum term]; Sanchez v. Kane, 1049,
1062 (C.D. Cal. 2006); Rosenkrantz v. Marshall, 444 F.Supp.2d 1063,
1084 (C.D. Cal. 2006); Willis v. Kane, 458 F.Supp.2d 1126, 1135 (N.D.
Cal. 2007); Thelander v. Kane, Slip Copy, WL 2220973, *8 (N.D. Cal.
(8/1/2007)), just to cite a few. Petitioner further expressly
realleges that the Board failed to consider the unusual circumstances
of the commitment offense and the significant stress he was under
at the time of the offense.

IX

In response to paragraph 12 of respondent's Answer, Petitioner
realleges that there is no evidence supporting the Board's finding
that he lacks a marketable skill. Not only is Petitioner a college
graduate with teaching credentials and, in the Philippines where
he will return can still teach (HT 11:1-4), but he also has also

- 5 -

been offered employment by several businesses in the Philippines
upon his return (HT 13:8-12), but also owns a business in the
Philippines being managed by a younger brother (HT 13:15-24) and
has been employed in a skilled position in the Prison Industry
Authority since 1993 with above average work reports (HT 16-18)
(In re Elkins, 144 Cal.App.4th, at 483, supra [Board considers working
in PIA "better than vocation because he ha[s] a chance to work in
that environment and achieve a journeyman level"]).  Moreover,
"[n]othing in the record indicates that defendant's criminality or
ability to support himself was affected by any limitation of his
vocational...skills" (Pirtle v. California Board of Prison Terms,
Slip Copy, 2007 WL 1544620, *17 (E.D. Cal. 5/29/07)).  No rational
connection can be made between Petitioner's preoffense employment
history, the offense, his offers of employment upon parole and his
current risk.

    Petitioner admits, while it may be true Petitioner has not
participated in self-help, e.g., anger management, Petitioner denies
that the underpinning of the commitment offense was due to a chronic
inability to control his anger, but rather the result of highly
unusual circumstances that will never again occur.  Petitioner's
murder of his cousin's husband was the result of a psychological
meltdown by being kept from his family and being isolated in this
country by the Philippine congressman Petitioner's was working for,
the state's sentencing expert noting in the POR that "[t]he crime
was committed because of unusual circumstances in that there was
a strong possibility the defendant was suffering from a mental
disorder at the time of the offense" (EXHIBIT 1, p. 7).  Being fully

- 6 -

aware that Petitioner has limited participation in self-help, in
1999 it was the expert opinion of Dr. Ferrini, although Petitioner
"showing little--if any--insight into the instant offense," if he
were "released to the community, his violence potential is estimated
to be no more than the average citizen in the community" (EXHIBIT
5, p. 5). In 2004, it was Dr. Steward's expert opinion that
Petitioner "had a history of depression, which is resolved" (EXHIBIT
8, p. 3), and it was Dr. Steward's expert opinion that the factors
that led up to the instant offense "created substantial pressure
in inmate Lujao" (EX. 8, p. 4), concluding Petitioner is no more
of a threat to the community "than the average citizen in the
community" and, relatively important, Petitioner "does not show a
history of constant, or even repetitive, aberrant behavior in relation
to stress" (EX. 8, p. 5). In 2006, in an extensive evaluation, it
was Dr. Macomber's expert opinion, after noting historical factors
leading up to the offense, "[this offense appears to be quite
situational.... This is a situation that is not likely to ever re-
occur." (EXHIBIT 11, pp. 2-3). Dr. Macomber observed that Petitioner
"has remained disciplinary-free for the 18 years of his incarceration.
This is a remarkable achievement, especially in view of the fact
that this institution is currently experiencing a great deal of racial
tension, as well as occasional racial riots. Living in a stressful
environment, in which there is constant interpersonal conflicts..."
(EX. 11, p. 3); concluding, Petitioner "probably poses less risk
to society than the average citizen in the community" and "no longer
poses any risk to society in any way" (EX. 11, p. 4). Even
correctional experts evaluating Petitioner for parole, in their expert

opinion that Petitioner "would probably pose a low degree of threat
to the public at this time, if released from prison" (EXHIBIT 10,
p. 4). The respondent presents no contravening evidence to the many
expert opinions; thus, no rational connection was therefore made
by the Board or state court that Petitioner would be a risk to public
safety without participating in self-help. Thus, while "some
evidence" may support the fact that Petitioner has not completed
a "vocational trade" or participated in "anger management," support
of those factors do not support the ultimate decision that Petitioner
would be a current threat to public safety (Hayward v. Marshall, 512
F.3d, at 543, supra; In re Roderick, 154 Cal.App.4th, at 263, supra).

                                X

        In response to paragraph 14 of respondent's Answer, Petitioner
denies that an evidentiary hearing is not necessary in this matter.
An evidentiary hearing is necessary for the following reasons: (1)
the merits of Petitioner plea agreement are in factual dispute and
the state did not conduct an evidentiary hearing to resolve the
dispute as to exactly what the plea agreement entailed; (2) the
state's factual determination is not fairly supported by the record,
and is fact contrary to the record in many instances; (3) fact-finding
procedure employed by the state was wholly inadequate to afford a
full and fair hearing in that no fact-finding procedure was employed
in that Petitioner received nothing but one line summary denials
in all three state courts; (4) material facts were not adequately
developed in the state courts; and (5) Petitioner was never afforded
a full and fair hearing (Earp v. Ornoski, 431 F.3d 1158, 1166-1167
(9th Cir. 2005).

                            - 8 -

XI

In response to paragraph 15 of respondent's Answer, Petitioner, expressly denies that he has not established any grounds for federal habeas corpus relief.

XII

Except as expressly admitted above, Petitioner denies, generally and specifically, each denial of the respondent's, and specifically denies that his administrative, statutory, or constitutionally guarantees have not been violated by the Board and state courts.

Accordingly, Petitioner respectfully requests that the Court grant Petitioner's writ and order the Board to conduct a fair and impartial hearing wherein it complies with due process and any instructions by this Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

### A R G U M E N T

THE STATE COURT DENIAL OF PETITIONER'S HABEAS CORPUS CLAIM WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, AND WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

Respondent's argument "A" is a boilerplate argument on procedural grounds that has been clearly settled in this Circuit, being patently rejected Hayward v. Marshall, 512 F.3d, at 541-542, supra). Therefore, the argument is frivolous and meritless, as well as vexatious.

In regards to the criticism that "[d]espite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the Hill some-evidence standard of review...to habeas petitions challenging denials of parole" (Ans. p. 7), even absent a Supreme

- 9 -

Court holding, California's Supreme Court has held, relying on
Superintendent v. Hill, 472 U.S. 445, supra, that judicial review
of parole unsuitability determinations is "some evidence" (In re
Rosenkrantz, 29 Cal.4th, at 655-658, supra). Unless state law is
contrary to the constitution, federal courts are to follow state
law. The respondent, counsel for the Board, being the "top cop"
of the state and enforcer of the law, rather than instructing his
client, the Board, to follow the law continues to allow the Board
to violate the law with impunity then defend their unconstitutional
actions, burdening the courts, state and federal, with challenges
to these constitutional violations. Then, once before the courts,
continue to make these frivolous and vexatious arguments.

There is no reasoned state court decision, thus the Court must
independently review the record (Himes v. Thompson, 336 F.3d 848,
853 (9th Cir. 2003).

1. After 18 Plus Years Into A 15 Years to Life Sentence
   Sentence, There Is No Evidence Petitioner Is A CURRENT
   Threat to the Public.

"It violates a prisoner's right to due process when the Board
or Governor attaches significance to evidence that forewarns no danger
to the public or relies on an unsupported conclusion" (In re Tripp,
150 Cal.App.4th 306, 313 (2007)). The Board's decision in case at
bench is based on three findings: (1) the commitment offense that
is now 20 years old (HT 29-30); (2) not participating in anger
management in the 4 years leading up to Petitioner 2006 parole hearing
(HT 30-33); and (3) Petitioner's lack of realistic parole plans and
failure to develop a marketable skill (HT 33). The Board, nor state
court, made any rational connection between the factors relied on

- 10 -

and Petitioner's <u>current</u> threat to the public.

Currently, the most persuasive, and instructive authority on some evidence and how it is to be applied and weighed is the Ninth Circuit Court of Appeals precedent setting case of <u>Hayward v. Marshall</u>, 512 F.3d 536, (9th Cir. 2008). Relying on <u>In re Lee</u>, 143 Cal.App.4th,1400 (2006) [Petition  for Review denied, supersedes denied, depublications denied]; <u>In re Elkins</u>, 144 Cal.App.4th 475 (2006) [Petition for Review denied, supersedes denied, depublication denied]; and <u>In re Scott II</u>, 133 Cal.App.4th 573 (2005) (see <u>Ryman v. Sears and Robuck</u>, 505 F.3d 993, 995 (9th Cir. 2007) ["where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts"] internal quotation marks omitted), analyzing California's parole law, reviewing federal constitutional protections of the "some evidence" standard under the application of California law, the Ninth Circuit Court of Appeals concluded the suitability and unsuitability factors set out in Cal. Code Regs., tit. 15, § 2402(c) and (d), in <u>Hayward v. Marshall</u>, 512 F.3d, at 543, <u>supra</u>:

"Even though these suitability and unsuitability factors are helpful in analyzing whether a prisoner should be granted parole, California courts have made it clear that the 'findings that are necessary to deem a prisoner unsuitable for parole,' <u>Irons [v. Carey]</u>, 505 F.3d [846,] at 851 [(9th Cir. 2007)], 2007 WL 2927359, at *3, are not that a particular factor or factors indicating unsuitability exists, but that a prisoner's release will unreasonably endanger public safety. (Citations); see Cal. Penal Code § 3041(b) (providing that the Board 'shall set a release date unless...consideration of the public safety requires a more legthy period of incarceration for this individual'). For our purposes, then, '[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety.' <u>Lee</u>, 143 Cal.App.4th at 1408 (citations and footnotes omitted); <u>see also In re Elkins</u>, 144 Cal.App.4th 475, 499, 50 Cal.Rptr.3d 503 (Cal. Ct. App. 2006) (<u>holding that the 'governor, in</u>

reviewing a suitability determination, must remain focused...on facts indicating that release currently poses 'an unreasonable risk of danger to society'" (citing Cal. Code Regs. tit. 15, § 2402(a)); Scott, 133 Cal.App.4th at 591 ('The factor statutorily required to be considered and the overarching consideration, is "'public safety.'" (citing Cal. Penal Code § 3041(b))" (emphasis and ellipsis in original).

While it may be argued that Hayward v. Marshall is only "dicta," that dicta is instructive authority in the Ninth Circuit.  That instruction being that parole suitability turns on two factors: (1) time, the factual predicate, has the prisoner served his minimum term?; and (2) rehabilitation, the legal predicate, is the prisoner rehabilitated? (McCarns v. Dexter, ___ F.Supp.2d ___, 2008 WL 360827, *13 (C.D. Cal. 2008) [factual predicate is satisfied when prisoner has served minimum term; legal predicate is satisfied when prisoner is rehabilitated]).

This principle was recently affirmed in a case remanded to the Third Appellate District by the California Supreme Court, see In re Ronald Singler, ___ Cal.App.4th ___, 2008 Cal. App. LEXIS 408 (2008), filed March 28, 2008.  The Appellate Court explained, "the relevant test is not whether some evidence supports the reasons cited for denying parole, 'but whether some evidence indicates [an inmate's] release unreasonably endangers public safety.' (In re Lee, supra, 143 Cal.App.4th at p. 1408) (In re Singler, 2008 Cal. App. LEXIS 408, *25 fn 2 [It is to this statement in Lee that the California Supreme Court specifically directed us in its order granting review and transferring the matter to us"]).  The Singler court later opined at 2008 Cal. App. LEXIS 408, *38-39, supra:

"Consequently, we obediently reassess this matter, applying the judicial gloss that Scott, Elkins, and Lee placed on the standard of review articulated in Rosenkrantz.  As we now understand the test apparently embraced by the California Supreme Court, a court may overturn the Board's denial of parole based solely on the nature of the commitment offense if (1) a significant period of time has

- 12 -

passed since the crime, (2) there is uncontroverted evidence of the inmate's rehabilitation, and (3) the crime was not committed in such an especially heinous, atrocious, or cruel manner, so as to undermine the evidence that the inmate's rehabilitative efforts demonstrate he no longer would be a danger to society if released on parole."

Was Petitioner a threat to public safety 20 years ago when he felt trapped and helpless after being manipulated by his employer, no longer having a valid visa and under extreme stress being separated from his family in a foreign country? Yes, he was. But, is he a threat to the public today? That is the question. Is it only through "self-help" groups one can be rehabilitated? No. One can be rehabilitated through self-reflection. It was the expert opinion of Dr. Terrini that Petitioner "appears to have insight which would suggest that he would be aware of those conditions and feelings that would lead up to a deterioration of his mental condition, and I suspect that he would be able to do so upon parole" (EXHIBIT 5, p. 4). And it was Dr. Macomber's expert opinion that Petitioner's "insight and self-awareness were very good" (EXHIBIT 11, p. 2), with "prognosis for successful adjustment in the community in this case is excellent" (EX. 11, p. 4). Cf. Hayward v. Marshall, 512 F.3d, at 544, "Hayward presented a low-to-moderate risk of danger to society."

Although this is a horrible, horrible murder, stabbing his victim 11 times, there is not, however, anything about this offense that is beyond the minimum necessary to sustain the conviction. While the Board found the murder to be "carried out in a callous manner," (Hayward v. Marshall, 512 F.3d, at   there is no evidence Petitioner tormented, terrorized, or injured the victim before he stabbed him, or that he gratuitously increased or prolonged his pain and suffering (In re Smith, 114 Cal.App.4th 343, 367 (2003); cf. In re Van Houton,

116 Cal.App.4th 339 (2004) [special circumstances qualifying for
death penalty or life without possibility of parole constitute acts
beyond the minimum necessary to sustain the conviction (Id., at 352),
Van Houton "stabbed a woman who was already dead, and the more she
did it the more fun it was" (Id., at 346), "the victims were bound
and mutilated" and therefore was "a gratuitous mutilation" (Id.,
at 351); In re Ruzzo, ___ Cal.App.4th ___, 2008 DJDAR 1962, 1967
(2/6/08) [racially motivated torture murder of victim was evidence
of special circumstances making the crime particularly egregious]).

Assuming, however, the commitment offense was particularly
heinous, with the passage of 18 years, now 20 years, the same
conclusion can be reached in this case as was reached in Hayward:
"We conclude, however, that in the unusual circumstances of this
case, including Hayard's rehabilitation by education and conduct
while imprisoned..., Hayward's commitment offense, which occurred
twenty-five years ago, cannot demonstrate that Hayward's release
will pose an imminent danger to public safety" (Hayward v. Marshall,
512 F.3d, at 546, supra). When comparing Petitioner's preconviction
history to that of Hayward, who was a member of a motorcycle gang,
numerous prior convictions, and postconviction history, continued
gang involvement in prison for a time, used drugs in prison and was
not disciplinary-free, and his motive, to that of Petitioner who
the instant offense was his only violation of the law before and
after, and the extreme stress he was under when he committed the
offense, after the passage of 18, now 20 years, there is zero evidence
Petitioner "will pose an imminent danger to public safety."

The contention that Petitioner has not participated in adequate

- 14 -

self-help in anger management, in light of Petitioner's 20 years of an exemplary prison record and the forensic experts opinions in this area of Petitioner's personality, the Board's contention "you don't really need Anger Management, that you've got yourself under control, sir, I beg to differ with you. And we need to have confidence in you to know -- you need to prove to us that you've gotten yourself under control" (HT 31:14-18), rings hollow and lacks any evidence or rational connection to Petitioner's current threat to the public.

Moreover, as the record clearly illustrates, not only does Petitioner have marketable skills, and offers of employment in the Philippines upon his return, but owns a business in the Philippines and has a family to help with his return.

The Board's reasons to deny parole do not add up to a current threat to public safety.

In that Petitioner's commitment offense will never change, as articulated by the United States Supreme Court: "The decision turns on...primarily what a man is and what he may become rather than simply what he has done" (Greenholtz, 442 U.S., at 10, supra); moreover, "[i]t is important that we not overlook the ultimate purpose of parole which is a component of the long-range objective of rehabilitation" (Id., at 13). Thus, "[t]he behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release" (Id., at 15). The Supreme Court also recognized that a prisoner "may become eligible for discretionary parole when the minimum term, less good time credits, has been served" (Id., at 4). While the factual

predicate is time, most significant is the legal predicate,
rehabilitation.  Rehabilitation, of course, being the ultimate
determining factor.  This is the <u>Greenholtz</u> doctrine: time, plus
rehabilitation, equal parole.

   2.  <u>Petitioner was Denied Individualized Consideration
       when the Board Failed to Consider and Weigh the
       Significant Stress he was Experiencing at the Time
       of the Offense.</u>

   Respondent argues that the Board did consider the stress
Petitioner was under when he committed the instant offense.  That
simply is not true.  Nowhere in the decision is the stress Petitioner
was under even remotely mentioned.

   Petitioner was denied "individualized consideration of all
relevant factors [] based upon factors specified by statute and
regulation" (<u>In re Rosenkrantz</u>, 29 Cal.4th, at 655, 658, <u>supra</u>).
Pursuant to the Board's regulations, stress is a factor that weighs
in favor of suitability (Cal. Code Regs., tit. 15, § 2402(d)(4) ["The
prisoner committed his crime as the result of significant stress
in his life, especially if the stress built up over a long period
of time"]).  From the POR to every psychological evaluation, the
sentencing experts and forensic experts all understand that this
was a situational crime due to significant stress in Petitioner's
life.  As noted by the <u>Weider</u> court, although the Board, like in
case at bench, "[t]he factor was mentioned during the hearing but
it is nowhere mentioned in the Board's decision.  The regulation
requires the Board to consider the role that such stress may have
played in the commission of the crime reflects the law's awareness
of human nature. .... We recognize that weighing the evidence is
for the Board.  But it does not appear that the Board considered

- 16 -

this evidence at all. This it is bound to do" (In re Weider, 154
Cal.App.4th 570, 590 (2006); see also In re Scott, 133 Cal.App.4th
573, 596 (2006); In re Lee, 143 Cal.App.4th, at 1412, supra).

Again, referring to the recent case of In re Singler, 2008 Cal.
App. LEXIS, 408, *40-41, supra:

> "And the fact that Singler shot his wife as their children slept in the next
> room does not demonstrate the crime was so especially heinous, atrocious, or
> cruel that, despite Singler's rehabilitative efforts, he remains a danger to
> the public nearly a quarter of a century later. He did not attack, injure, or
> kill multiple victims; he did not carry the offense in a dispassionate and
> calculated manner, such as an execution-style murder; the shooting did not
> demonstrate an <u>exceptionally callous</u> disregard for human suffering; and the motive
> for the crime was not inexplicable or very trivial. (§ 2402, subd. (c)(1).)
> Rather, all the psychological evaluations and uncontradicted evidence disclose
> that Singler, as he claims, committed the offense while experiencing an unusual
> amount of stress over a long period of time, which is a factor indicating
> **suitability for parole. (§ 2402, subd. (d)(4))".** Emphasis in original.

Petitioner was separated from his family, being manipulated
by his employer who exploited him, having an expired visa and not
knowing what to do, and in the heat of an intense political argument,
under significant stress, stabbed his cousin's husband. "This was
an unacceptable reason to kill another human being--as are virtually
all motives except for defense of self or others. However, viewed
in context, it was not trivial, inexplicable, or dispassionate; and
it did not reflect an exceptionally callous disregard for human
suffering so as to undermine the uncontested evidence that his
rehabilitative efforts showed he no longer would be a danger to public
safety if released on parole" (Citations) (Id., at 41).

Like in Singler, the offense being committed under significant
stress, and the uncontraverted evidence by forensic and correctional
experts that Petitioner is not a current threat, there is no logical
or legitimate reason to continue his imprisonment and not return
him home to the Philippines to be with his family that he has not

seen in 20 years.

Moreover, neither did the Board consider and weigh the factors of Petitioner having no juvenile criminal history, no prior adult criminal history, his stable social history, demonstrated remorse, his advanced age, and significant medical problems (Cal. Code Regs., tit. 15, § 2402(d)), denying Petitioner fair and unbias hearing.

The Ninth Circuit warned: "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes" (Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007); Hayward v. Marshall, 512 F.3d, at 545, supra). While the Board's "reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can initially be justified as fulfilling the requirements of state law[,] [¶] "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and prior criminal history, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" (Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003); In re Roderick, 154 Cal.App.4th 242, 264 (2007) [a rational connection must be made between the commitment offense 20 years ago and statutory basis for denial—current threat to public safety]; In re Tripp, 150 Cal.App.4th, at 309, supra ["the viciousness of the commitment offense must be balanced against the passage of time and rehabilitation"]). Thus, after exceeding the minimum term of the sentence, satisfying the factual predicate, suitability turns on the legal predicate, rehabilitation (McCarns v. Dexter, 2008 WL

360827, *13, supra; In re Singler, 2008 Cal. App. LEXIS 408, *38-39, supra). Unquestionably, Petitioner has satisfied both prongs and any further imprisonment serves no legitimate penological interest.

## C O N C L U S I O N

For the foregoing reasons it is respectfully requested that Petitioner's writ be granted and the decision of September 5, 2006 be vacated and a new hearing conducted wherein the Board considers and weighs all relevant and reliable information, and any instructions the Court may find necessary to assure the Board proceeds with due process of law.

DATED: April 11, 2008

Respectfully submitted,

Simeon Lujao
Petitioner in pro se

- 19 -

## PROOF OF SERVICE BY MAIL

CASE NAME:  LUJAO v. CURRY

CASE NO. :  C 07-4900 VRW

    I, Simeon Lujao, hereby declare that I am a party to the above titled action and am over the age of eighteen (18), and I did serve a true copy of the following:

    PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy in an envelope with first class postage fully prepaid and said envelope surrendered to correctional staff at the Correctional Training Facility for delivery to the prison mail room and therefrom delivered to the local United States Post Office the next business day from which there is postal service between the place of mailing and the addressee:

    Brian C. Kinney
    Deputy Attorney General
    455 Golden Gate Ave.
    San Francisco, CA 94102

    I declare under penalty of perjury that the foregoing is true and correct, doing so this 13th day of April, 2008, at Soledad, California.