IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIMEON LUJAO,                               No C-07-4900 VRW (PR)

       Petitioner,

    v                                     ORDER DENYING PETITION FOR WRIT
                                          OF HABEAS CORPUS
BEN CURRY, Warden

       Respondent.
_____/

       Petitioner Simeon Lujao, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 USC § 2254 challenging the California Board of Parole Hearings' ("BPH") September 5, 2006 decision to deny him parole.

       Per order filed on January 17, 2008, the court found petitioner's claim that BPH violated his due process rights, when liberally construed, colorable under § 2254, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Doc #3. Respondent has filed an answer and petitioner has filed a traverse. Doc ## 4 & 5.

I

On February 6, 1988, at approximately 9:00 pm, petitioner and his wife's cousin, Arturo Vasaya, were passengers in a car driving on highway 101 in San Benito county. Doc #4-4 at 2. According to petitioner, the two men were discussing the politics of their home country, the Philippines. Id. During the heated discussion, petitioner, who had been awake for two straight days, became angry and stabbed Vasaya 11 times, killing him. Id.

On August 30, 1988, petitioner was sentenced to 15 years to life in state prison following his guilty plea to second degree murder. Doc #4-2 at 2. His minimum eligible parole date was January 5, 1998. Doc #4-5 at 4.

At four of petitioner's parole suitability hearings held in 1997, 1999, 2002 and 2004, BPH repeatedly recommended that petitioner remain disciplinary free, upgrade vocationally and educationally and participate in self-help and therapy. See Doc #1, Exs 4, 6, 7 & 9 at 45–46.

On September 5, 2006, petitioner appeared before BPH for his sixth parole suitability hearing. Doc #4-5 at 2. At that hearing, BPH again found petitioner "was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Id at 32. BPH cited several reasons to support its decision, including: (1) the callousness of the crime; (2) the vulnerability of the victim; (3) petitioner's failures to develop a marketable skill, upgrade vocationally and participate in self-help and therapy; and (4)

1  petitioner's lack of a realistic parole plan.  Id at 32-36.
2  Petitioner's parole was deferred for four years.  Id at 35.
3            Petitioner unsuccessfully challenged BPH's decision in the
4  state superior and appellate courts.  Doc #1 at 4-5.  On August 8,
5  2007, the California Supreme Court summarily denied petitioner's
6  petition for review.  Id at 5.  This federal petition for a writ of
7  habeas corpus followed.

## II

10           The Antiterrorism and Effective Death Penalty Act of 1996
11 ("AEDPA"), codified under 28 USC § 2254, provides "the exclusive
12 vehicle for a habeas petition by a state prisoner in custody
13 pursuant to a state court judgment, even when the petitioner is not
14 challenging his underlying state court conviction."  <u>White v
15 Lambert</u>, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this
16 court may entertain a petition for habeas relief on behalf of a
17 California state inmate "only on the ground that he is in custody in
18 violation of the Constitution or laws or treaties of the United
19 States."  28 USC § 2254(a).
20           The writ may not be granted unless the state court's
21 adjudication of any claim on the merits:  "(1) resulted in a
22 decision that was contrary to, or involved an unreasonable
23 application of, clearly established Federal law, as determined by
24 the Supreme Court of the United States; or (2) resulted in a
25 decision that was based on an unreasonable determination of the
26 facts in light of the evidence presented in the State court

3

1  proceeding." 28 USC § 2254(d).  Under this deferential standard,
2  federal habeas relief will not be granted "simply because [this]
3  court concludes in its independent judgment that the relevant
4  state-court decision applied clearly established federal law
5  erroneously or incorrectly.  Rather, that application must also be
6  unreasonable."  <u>Williams v Taylor</u>, 529 US 362, 411 (2000).
7         While circuit law may provide persuasive authority in
8  determining whether the state court made an unreasonable application
9  of Supreme Court precedent, the only definitive source of clearly
10 established federal law under 28 USC § 2254(d) rests in the holdings
11 (as opposed to the dicta) of the Supreme Court as of the time of the
12 state court decision.  <u>Williams</u>, 529 US at 412; <u>Clark v Murphy</u>, 331
13 F3d 1062, 1069 (9th Cir 2003).

15                                  III
16         Petitioner seeks federal habeas corpus relief from BPH's
17 September 5, 2006 decision finding him unsuitable for parole and
18 denying him a subsequent hearing for four years on the ground that
19 the decision does not comport with due process.  Specifically,
20 petitioner argues that there is "no evidence that [he] is a <u>current</u>
21 threat to public safety."  Doc #1 at 6, emphasis in original.
22 Petitioner adds that BPH's decision finding him unsuitable for
23 parole violated his "plea agreement."  Id at 6.

25                                   A
26         Under California law, prisoners serving indeterminate life

sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute. In re Dannenberg, 34 Cal 4th 1061, 1069-70 (2005). At that point, California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal Penal Code § 3041(b). Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal Code Regs tit 15, § 2402(a). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offense, including behavior before, during and after the crime. See Cal Code Regs tit 15, § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections." Sass v California Bd of Prison Terms, 461 F3d 1123, 1128 (9th Cir 2006); McQuillion v Duncan, 306 F3d 895, 902 (9th Cir 2002). It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v Terhune, 334, F3d 910, 915 (9th Cir 2003).

Petitioner's due process rights require that "some evidence" support the board's decision finding him unsuitable for parole. Sass, 461 F3d at 1125. This "some evidence" standard is deferential, but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary." Superintendent v Hill, 472 US 445, 457 (1985). Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id at 455. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id at 455-56.

Due process also requires that the evidence underlying the parole board's decision have some indicium of reliability. Biggs, 334 F3d at 915; McQuillion, 306 F3d at 904. Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v Oregon Parole Bd, 825 F2d 1396, 1399 (9th Cir 1987). If the board's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision. Rosas v Nielsen, 428 F3d 1229, 1232 (9th Cir 2005).

B

Petitioner claims that BPH's finding that he was unsuitable for parole violated his due process rights because "there

6

1 was no evidence that petitioner is a <u>current</u> threat to public
2 safety" and because the unsuitability finding violated his plea
3 agreement.  Doc #1 at 6, emphasis in original.  Petitioner is
4 mistaken on both counts.

### 1

Regarding the alleged violation of his plea agreement, petitioner relies on the following statements contained in the August 29, 1988 probation report to support his argument:

> * * *  It is felt that [petitioner] should receive a sentence of 21 years in this matter so that he will serve a minimum of approximately seven years for his second degree murder conviction.  Seven years is the average time served for people who commit such a crime and the defendant's actions were neither more outrageous or [sic] more mitigated than the usual second degree murder.  Therefore, it will be recommended that [petitioner] be sentenced to 21 years in prison.

Doc #1, Ex 1 at 8.  According to petitioner, a native of the Philippines who came to the United States in 1986 when he was 39 years of age, "being a foreigner and totally unfamiliar with the American judicial system, [he] was lead [sic] to expect that his sentence would not exceed 21 years, minus conduct credits to reduce the term."  Doc #1 at 6; Id, Ex 1 at 1 & 3-4.

There is no evidence in the record suggesting the existence of an enforceable plea agreement limiting petitioner's term of incarceration to 21 years.  Rather, the record clearly indicates that following petitioner's July 13, 1988 guilty plea to second degree murder, the probation officer in his August 29, 1988

7

report merely "recommended that [petitioner] be sentenced to 21 years in prison." Doc #1, Ex 1 at 8, emphasis added. Imposing a sentence after a criminal conviction, of course, is a matter left to the sole discretion of the trial judge. See Cal Pen Code, § 12; People v Navarro, 7 Cal 3d 248, 258 (1972) ("[t]he imposition of sentence and the exercise of sentencing discretion are fundamentally and inherently judicial functions.")

Further, the evidence in the record shows that petitioner originally faced a more serious charge of — and necessarily a lengthier prison sentence for — first degree murder. Doc 4-3 at 3. Prior to his trial date, on July 13, 1988, represented by counsel, he pleaded guilty to a lesser charge of second degree murder. Doc # 4-2 at 2. Although petitioner's apparent confusion regarding the length of his prison sentence is regrettable, the record shows that he was represented by counsel through his plea and sentencing. Id. There simply is no evidence before the court sufficient to allow habeas relief on his claim. Moreover, the state courts' rejections of petitioner's plea agreement claim cannot be said to have been objectively unreasonable. See 28 USC § 2254(d).

2

Regarding petitioner's claim that BPH's finding that he was unsuitable for parole violated his due process rights because "there was no evidence that petitioner is a current threat to public safety," the record shows that BPH afforded petitioner and his counsel an opportunity to speak and present petitioner's case at the

1 hearing, gave them time to review documents relevant to petitioner's
2 case and provided them with a reasoned decision in denying parole.
3 Doc #4-5 at 9-10, 28-31 & 32-36.

4     The record also shows that BPH relied on several
5 circumstances tending to show unsuitability for parole and that
6 these circumstances formed the basis for its conclusion that
7 petitioner posed "an unreasonable risk of danger to society or a
8 threat to public safety if released from prison." Doc #4-5 at 32;
9 see Cal Code Regs tit 15, § 2402(a) (stating that a prisoner
10 determined to be an unreasonable risk to society shall be denied
11 parole).

12     First, the board examined the commitment offense and found
13 that the offense "was carried out in an especially cruel and callous
14 manner. * * * The offense was carried out in a dispassionate
15 manner. And the victim was certainly abused during the offense.
16 Because at one point during the crime the victim even cried out to
17 [petitioner] to please, stop stabbing him." Doc #4-5 at 32; see Cal
18 Code Regs tit 15, § 2402(c)(1)(D) (listing "exceptionally callous
19 disregard for human suffering" as factor tending to show
20 unsuitability for parole).

21     Second, BPH noted that petitioner "failed to develop a
22 marketable skill that can be put to use upon release." Doc #4-5 at
23 33. Third, and related, BPH cited petitioner's consistent failure,
24 contrary to previous recommendations, "to upgrade vocationally."
25 Id; see Doc #1, Ex 4; Id, Exs 6, 7 & 9 at 45-46. BPH also noted
26 that petitioner "has not sufficiently participated in beneficial

9

1  self-help and or therapy programs.  Basically, there has been very
2  little self-help that [petitioner has] participated in and none
3  since the last appearance, zero.  There has been no Anger Management
4  * * *."  Id.
5          BPH also considered other factors tending to support
6  suitability for parole including:  that petitioner had been
7  discipline free for the duration of his incarceration; that he had
8  taken some steps towards self-help; that he had watched a successful
9  reentry video in November 2003; that he participated in Life Skills
10 in September 1998 and Breaking Barriers in 1991; that he has had
11 positive work reports; and that he has been in Prison Industry
12 Authority since 1993.  Doc #4-5 at 35.
13         At the conclusion of the hearing, BPH summarized
14 petitioner's situation as follows:

> * * * [petitioner has] definitely done some
> things that [he] should be commended for.
> However, these positive aspects of
> [petitioner's] behavior [do] not outweigh the
> factors of unsuitability.  * * * the crime was
> very cruel and mean.  And the crime was done
> without feeling bad about hurting others.  * * *
> [the victim] was crying out and asking
> [petitioner] to stop, please stop stabbing him.
> * * * [petitioner] did not care if people
> suffered.  And, the victim was definitely abused
> during the crime.  And the reason for the crime
> was very small compared to the hurt it caused.
> * * *  And [petitioner] has poor [p]arole
> [p]lans.  * * * [There are no] letters of
> support whatsoever.  [Petitioner] lacks a
> realistic [p]arole [p]lan in that he does not
> have a viable residential plan.  He does not
> have acceptable employment plans, and does not
> have a marketable skill.

Id at 35-36.

10

1    The state superior court affirmed the decision of BPH to
2 deny petitioner parole, finding that it was "supported by some
3 evidence."  Doc #4-7 at 2.  The state appellate court summarily
4 denied petitioner's request for habeas corpus relief, Doc #4-8 at 2,
5 and the state supreme court summarily denied his petition for
6 review.  See Doc #1 at 5.
7    On this record, the court finds that the state courts'
8 rejection of petitioner's due process claim was not contrary to, nor
9 did it involve an unreasonable application of, clearly established
10 federal law, and it was not based on an unreasonable determination
11 of the facts.  See 28 USC § 2254(d).
12    The record shows that BPH had some reliable evidence to
13 support its finding of unsuitability.  Although petitioner has
14 served the minimum 15 year determinate part of his sentence, he has
15 been advised during at least four of his five parole suitability
16 hearings to upgrade vocationally and educationally and participate
17 in self-help and therapy.  Doc #1, Exs 4, 6, 7 & 9 at 45–46.  By
18 petitioner's own admission, he has failed to do this.  See Doc #5 at
19 6.  BPH's finding at his sixth hearing that petitioner had not
20 sufficiently participated in these recommended programs, viewed in
21 conjunction with the callous nature of the crime and petitioner's
22 lack of a realistic comprehensive parole plan, reasonably
23 contributed to its determination that petitioner was unsuitable for
24 parole.  See Hill, 474 US at 455–56; see, for example, Irons v
25 Carey, 505 F3d 846, 850 (9th Cir 2007) (upholding denial of parole
26 based solely on gravity of offense).  On this record, BPH reasonably

concluded that petitioner was not yet suitable for parole.  It is not up to this court to "reweigh the evidence."  <u>Powell v Gomez</u>, 33 F3d 39, 42 (9th Cir 1994).

## IV

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

```
                                    VAUGHN R WALKER
                                    United States District Chief Judge
```

G:\PRO-SE\VRW\HC.07\Lujao-07-4900-habeas denial.wpd